UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KRISHNA MUIR,

    Plaintiff,

v.

NAVY FEDERAL CREDIT UNION, et al.,

    Defendants.

Civil Case No. 03-1193 (RJL)

**FILED**
SEP 2 9 2010
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## MEMORANDUM OPINION
(September 29, 2010) [#87]

Plaintiff Krishna Muir brought this action against Navy Federal Credit Union ("NFCU") on June 3, 2003. Plaintiff claims that NFCU tortiously set off and converted a joint bank account held by plaintiff and his father in the amount of $27,022.90 to satisfy a debt that had been incurred by his father, individually. After prolonged litigation, this case is once again before this Court; this time on NFCU's Motion for Summary Judgment.[1] The only claims against NFCU remaining are plaintiff's claims of tortious interference with a business expectancy, lost profits and interest.[2] For the following

---

[1] Plaintiff brought this suit against NFCU and Patricia Dearing, LLC, a law firm retained by NFCU to collect on plaintiff's father's debt ("Dearing"). Plaintiff's claims against Dearing are also before this Court on Dearing's Motion for Summary Judgment [#88] and have been disposed of in a Memorandum Opinion issued concurrent with this one.
[2] After two appeals and various decisions by this Court, all other claims against NFCU raised in plaintiff's complaint have been decided.

1

reasons, the defendant's Motion for Summary Judgment as to all claims is GRANTED. The plaintiff is awarded interest, however, in the amount of $4,365.41.

## BACKGROUND

The facts of this case have been recounted through various rulings both by this Court and our Circuit Court and do not require a lengthy reiteration here.[3] In short, on October 2, 2002, plaintiff deposited $29,015.55 in a joint account at NFCU that plaintiff held with his father. Compl. ¶ 9. NFCU proceeded to set off that account in the amount of $27,022.90 to satisfy a debt that been incurred by his father, individually. NFCU Stmt. of Facts, Sept. 24, 2009 ("NFCU Stmt") ¶ 10. Because of the reasons set forth in my March 1, 2005 memorandum opinion and order, I awarded plaintiff actual damages in the amount of $27,022.90. *Muir v. Navy Fed. Credit Union*, No. 03-1193, 2005 U.S. Dist. LEXIS 3559, at *3-4 (D.D.C. Mar. 1, 2005). Over the course of the next two years, this Court went on to, *inter alia*, grant defendant's motion to dismiss plaintiff's claims of tortious interference with a business expectancy, lost profits, and punitive damages, grant defendant's motion for summary judgment on plaintiff's claim of breach of fiduciary duty, and deny plaintiff's request for interest. In 2008, our Circuit Court remanded the case for reconsideration on the issue of plaintiff's claim of tortious interference, lost profits, and interest. *Muir v. Navy Fed. Credit Union*, 529 F.3d 1100 (D.C. Cir. 2008). It affirmed this Court's rulings, however, on all other issues relating to defendant NFCU. *Id.*

---

[3] *See Muir v. Navy Fed. Credit Union*, 529 F.3d 1100 (D.C. Cir. 2008); *Muir v. Navy Fed. Credit Union*, 484 F. Supp. 2d 3 (D.D.C. 2007); *Muir v. Navy Fed. Credit Union*, No. 03-1193, 2005 U.S. Dist. LEXIS 3559 (D.D.C. Mar. 1, 2005).

ANALYSIS

Summary judgment is appropriate when the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, in opposing a motion for summary judgment, the non-moving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248 (citing Fed. R. Civ. P. 56(e)). Moreover, "[t]he mere existence of a scintilla of evidence in support of the [non-movant]'s position will be insufficient." *Id.* at 255. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

I. **Tortious Interference and Lost Profits**

Under Virginia law,[4] a claim of tortious interference with a business expectancy requires: (1) a business expectancy with a probability of future economic benefit; (2) defendant's knowledge of the expectancy; (3) reasonable certainty that without defendant's intentional misconduct, plaintiff would have realized the expectancy; and (4) damages. *Commercial Bus. Sys. v. Halifax Corp.*, 484 S.E.2d 892, 896 (Va. 1997); *Glass v. Glass*, 321 S.E.2d 69, 77 (Va. 1984).

---

[4] Plaintiff's surviving claims against defendant NFCU are before this Court under diversity jurisdiction, and it is uncontested that Virginia law applies. Mem. Op. and Order of Mar. 1, 2005 at 2, n. 1.

3

Further, Virginia law protects only specific expectancies. Thus, the mere expectation to engage in business is not sufficient to sustain a claim of tortuous interference. *See American Tel. & Tel. Co. v. Eastern Pay Phones, Inc.*, 767 F. Supp. 1335, 1340 (E.D. Va. 1991), *opinion vacated on non-substantive grounds*, 789 F. Supp. 725 (E.D. Va. 1992) ("The expectancy of remaining in business is too general to support a tortious interference claim under Virginia law."). Likewise, defendant's knowledge must be similarly specific. *Levine v. McLeskey*, 881 F. Supp. 1030, 1058 (E.D. Va. 1995) (applying Virginia law to find that only knowing that the plaintiff generally "wished to develop apartments" was not sufficient knowledge to sustain a tortious interference claim when the business expectancy in question was plaintiff's acquisition of financing); *see also Long v. Old Point Bank*, 41 Va. Cir. 409, 428 (Va. Cir. 1997) (noting that knowledge of the *specific* business expectancy is sufficient to sustain the knowledge element in a claim of tortious interference); *Bill Greever Corp. v. Tazewell Nat'l Bank*, 41 Va. Cir. 298, 305-06 (Va. Cir. 1997) (same).

With respect the future benefit, Virginia law protects a specific business expectancy only when there is reasonable probability of future economic benefit and only when, applying an objective test, there is a reasonably certainty that without the defendant's misconduct, plaintiff would have realized the expectancy. *Commercial Bus. Sys.*, 484 S.E.2d at 897. In other words, "[p]roof of a 'possibility' that such benefit will accrue is insufficient." *Id.*

In addition, in order to recover lost profits under any theory of liability including tortious interference, a plaintiff must put forth evidence that "affords a sufficient basis for

4

estimating" the amount of lost profits being claimed. *Boggs v. Duncan*, 121 S.E.2d 359, 363 (Va. 1961). Thus, lost profits cannot be recovered if they are contingent or uncertain. *Haywood v. Massie*, 49 S.E.2d 281, 283 (Va. 1948). Moreover, while past performance in an existing business may be indicative of future profits, profits associated with a new business or enterprise, which are contingent on various factors including future bargains and the market, are often too speculative as a general rule to support a claim for lost profits under Virginia law. *Clark v. Scott*, 520 S.E.2d 366, 370 (Va. 1999); *Mullen v. Brantley*, 195 S.E.2d 696, 700 (Va. 1973). For the same reasons, profits associated with future real estate transactions are similarly speculative. *Murray v. Hadid*, 385 S.E.2d 898, 904-05 (Va. 1989); *see also Tabbaie v. Ramos*, 2007 Va. Cir. LEXIS 112, *9-11 (Fairfax Co. Cir. Ct., Aug. 3, 2007).

Here, there is no evidence that defendant had knowledge of the alleged business expectancy.[5] In fact, plaintiff admitted during his deposition that he refused to disclose to NFCU why he required the funds, saying only that he needed money for a "business opportunity" or "business venture." Muir Dep. 40:9–12, 291:8–292:4. When asked if plaintiff told NFCU any details about the "business opportunity," plaintiff stated that it was none of NFCU's business. *Id* 291:17–20.

---

[5] NFCU also claims that because plaintiff did not respond on Summary Judgment to NFCU's Statement of Undisputed Facts, it violated LCvR7(h)(1) and the Court must find that all the facts set forth in the Statement must be considered conceded. NFCU's Reply at 2. This Court finds, notwithstanding, that even accepting the facts alleged by plaintiff in his pleadings and exhibits as conceded, for the reason's herein, plaintiff's claims cannot survive summary judgment.

Further, notwithstanding NFCU's limited knowledge, plaintiff has set forth no evidence, which – even under the favorable standard of summary judgment – would be sufficient for a reasonable jury to find that there was a *probability* of future economic benefit. Indeed, plaintiff's claim that he was precluded from investing in at least three properties in and around Washington, D.C., is based on evidence which hardly presents a possibility, let alone probability, of future profits. How so?

The first real estate investment plaintiff proffers was located in Germantown, Maryland ("Property 1") and belonged to Michelle Turner ("Turner"). Plaintiff claims that he and Turner had an agreement whereby he would satisfy Turner's outstanding debt on Property 1 (approximately $8000) and invest in improvements (approximately $1000). Pl. Opp'n at 10-11. In exchange, plaintiff would keep any profits from the sale above the $120,000 value of the outstanding mortgage. *Id.* However, at her deposition, Turner stated that, aside from recalling that plaintiff was going to help her avoid foreclosure, she could not recall what agreement, if any, she had with plaintiff. Turner Dep. 53: 5–19; Turner Dep. 45:14–48:3; *see also* Muir Dep. 247:6–22. At best, this evidence indicates that Turner and plaintiff *possibly* agreed to split any profits that might result *if* a future sale occurred at a price above $120,000. Turner Dep. 53: 5–19.

Further, plaintiff based his valuation of Property 1 on listings of two homes in the area that had sold for $155,000 and $161,000, respectively, but that he had never visited and could not thus compare to Property 1. Muir Dep. 249:20–250:3, 251:8–255:9.[6]

---

[6] The two homes had sold for $155,000 and $161,000, respectively. Muir Dep. 249:20–250:3.

6

Indeed, Turner ultimately sold Property 1 for $120,000. *Id.* 255:10–257:3. While plaintiff claims that Turner was desperate to unload the property and, therefore, settled for a lower price, plaintiff provided no evidence beyond the so-called "comparables" to indicate that he could have yielded $38,000 more on the sale. See 249:20–257:3. Moreover, plaintiff, at a minimum, would have had to yield $9000 more on the sale just to break even. *Id.* Thus, applying an objective standard, no reasonable jury could find a probability of future profit for plaintiff arising out of this investment opportunity.

The second property plaintiff proffered was located at a different location in Germantown Maryland ("Property 2"), and is based on the evidence even more attenuated. For starters, plaintiff presented *no* evidence that an agreement even ever existed between plaintiff and the owner of Property 2. *See, e.g.*, Muir Dep. 263:3–264:6, 317:2–320:1; *see also* Pl. Opp'n at 11-12. Indeed, plaintiff could not even recall the owner's name! Muir Dep. 263:9–11. Moreover, plaintiff provided no evidence regarding the prices for which he expected to buy or sell Property 2. *See, e.g.*, Muir Dep. 263:3–264:6, 317:2–320:1; *see also* Pl. Opp'n at 11-12. Again, plaintiff claims that he based his estimated profits on comparables, but does not claim to have even visited the comparable properties. Muir Dep. 263:12–264:1. Simply put, no reasonable jury could find that plaintiff could strike a deal with the owner, let alone turn a profit on the property. Thus, plaintiff once again fails to meet his burden.

Finally, the third investment property plaintiff offers was located on Hamlin Street in Washington, DC ("Property 3"). While plaintiff and a partner named Knaichica Ruffin ("Ruffin") did make an investment that earned them a profit on this property, Pl. Opp'n at

12, his claim that he would have invested <u>alone</u> if he had access to his funds at NFCU is totally unsubstantiated. *See* Muir Dep. 195:15–211:14; 264:10–270:22; 310:2–312:22. To the contrary, Ruffin testified at her deposition that she introduced the investment opportunity to plaintiff because she needed a partner to manage the repairs on the house. Ruffin Dep. 122:8–132:17. Such evidence is hardly sufficient to prove the possibility, much less the probability, that plaintiff could have invested in the property without Ruffin as his partner.[7]

## II. Interest

In accordance with my Order of January 4, 2007, plaintiff submitted a schedule of damages claiming $4,365.41 in interest, calculated at rate of 6% per annum over the course of 2 years, 6 months, and 25 days. Pl. Sched. Damages, Jan. 29, 2007. The award of prejudgment interest is, of course, within "the sound discretion of the trial court." *Skretvedt v. Kouri*, 445 S.E.2d 481, 487 (Va. 1994) (citing Va. Code Ann. § 8.01-382). Moreover, the Virginia Supreme Court has held that awarding interest compensates plaintiff "for the loss sustained by not receiving the amount to which he was entitled at the time he was entitled to receive it, and such award is considered necessary to place the [plaintiff] in the position he would have occupied if the party in default had fulfilled his

---

[7] Notwithstanding the above, under any theory of liability, plaintiff could not recover his alleged lost profits under Virginia law. Moreover, his claim to having successfully invested in a property in Florida is to no avail. *See* Pl. Opp'n at 9. Success in one real estate market cannot be indicative of success in another – particularly in the case of markets as different as Washington, D.C. and Florida. *See Murray v. Hadid*, 385 S.E.2d 898, 904-05 (Va. 1989). Further, plaintiff's claims that he used comparables to estimate his profits are equally as unconvincing, particularly when plaintiff must admit that he never visited the compared properties. *Id.* Ultimately, therefore, plaintiff's claims of tortious interference and lost profits cannot survive summary judgment.

obligated duty." *Marks v. Sanzo*, 345 S.E.2d 263, 267 (Va. 1986) (alteration in original) (internal citation omitted).

On March 1, 2005, I awarded plaintiff $27,022.90, finding that NFCU had wrongly set off those funds from his joint account. Having made that determination, it seems reasonable that NFCU should pay plaintiff, in addition to his actual damages of $27,022.90, interest on those funds. Because plaintiff's calculation covers the prejudgment period during which NFCU had control over his funds, including the period during which the Court's holding was vacated, and because Virginia law mandates the rate of 6%, Va. Code Ann. § 6.1-330.54, I agree with plaintiff's calculation and will award him $4,361.45 in interest.

## CONCLUSION

Accordingly, for the foregoing reasons, the Court GRANTS defendant Navy Federal Credit Union's Motion for Summary Judgment [#87] and awards plaintiff $4,361.45 in interest on my earlier award. An Order consistent with this decision accompanies this Memorandum Opinion.

_____
RICHARD J. LEON
United States District Judge